IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CLASSIC HARVEST LLC,<br><br>                      Plaintiff,<br><br>v.<br><br>FRESHWORKS LLC, CRISP HOLDINGS, LLC d/b/a FRESH ROOTS, FRESH ROOTS LLC, CHS HOLDINGS LLC, AGRIFACT CAPITAL LLC, JOSEPH T. CERNIGLIA, PHILLIP COLEMAN, DAVID R. GATTIS, JONATHAN S. GREEN, TIMOTHY G. HARRISON, CARL L. PERRY, and CHARLES H. SCHUCHARDT, each individually,<br><br>                      Defendants. | 1:15-cv-2988-WSD |

**OPINION AND ORDER**

This matter is before the Court on Defendant AgriFact Capital, LLC's ("AgriFact") "Emergency Motion Requesting Reduction in the Ordered Set Aside Amount" [99] ("the Motion"), which the Court construes as a Motion for Reconsideration of the Court's December 31, 2015, Order [98].

**I.  BACKGROUND**

This is an action under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a, et seq.  When perishable agricultural commodities

("Produce") are sold, PACA imposes a nonsegregated, "floating" trust, in favor of Produce sellers, on the Produce sold, products derived from the Produce, "and any receivables or proceeds from the sale of such" Produce or product derived from it. 7 U.S.C. § 499e(c)(2).  PACA requires the buyer to hold the trust assets "in trust for the benefit of all unpaid suppliers or sellers of such [Produce]," "until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers . . . ."  Id.  A trust beneficiary may bring an action in federal court "to enforce payment from the trust."  7 U.S.C. § 499e(c)(5).

CRISP Holdings, LLC d/b/a Fresh Roots ("CRISP") bought Produce on credit from wholesale Produce suppliers, including Plaintiff Classic Harvest, LLC ("Plaintiff").  CRISP then resold the Produce to its customers on credit, generating accounts receivable (the "Receivables").  Under PACA, CRISP was required to hold, in trust (the "PACA Trust"), the Produce, products derived from the Produce, and the Receivables or proceeds from the sale of the Produce (the "Trust Assets"), for the benefit of CRISP's unpaid Produce suppliers, including Plaintiff (all together, the "PACA Creditors").

On January 19, 2015, CRISP and AgriFact entered into what they characterized as a Factoring Agreement (the "Factoring Agreement"), under which CRISP "factored" to AgriFact certain of its Receivables in exchange for an

2

immediate payment of 80% of the face value of the Receivable, plus another payment after AgriFact collected on the Receivable, less AgriFact's fees and expenses, and other adjustments.[1]

From June 15, 2015, to August 14, 2015, Plaintiff sold Produce to CRISP valued in the total principal amount of $352,110.63.  (See [168.3]).  Plaintiff has not been paid for the Produce sold.

To collect the amount owed to it, on August 25, 2015, Plaintiff filed its Complaint [1] asserting claims against CRISP, its principals and parent company, for breach of their duties under PACA and to enforce the PACA Trust.  Plaintiff also asserts, in Count VII of its Complaint, a claim against AgriFact for conversion and unlawful retention of PACA Trust Assets.  Plaintiff claims that, under the Factoring Agreement, AgriFact improperly held and collected proceeds from the Receivables which, Plaintiff claims, were subject to the PACA Trust and should have been used to pay the priority claims of CRISP's PACA Creditors.[2]

On August 26, 2015, Plaintiff moved for a preliminary injunction to enjoin Defendants from using, consuming, or otherwise dissipating the Trust Assets,

---

[1] The Factoring Agreement is described in more detail in the Court's December 31st Order.

[2] On December 3, 2015, Plaintiff filed its Amended Complaint, adding claims against AgriFact for aiding and abetting the principals' breach of fiduciary duty, unjust enrichment and replevin, and a claim against all Defendants for attorneys' fees and costs.

3

including making payments from the assets to any creditor, person, or entity. (Mot. for Prelim. Inj. [5]). Plaintiff also requested that the Court exercise *in rem* jurisdiction over the Trust Assets and establish a framework for potential PACA creditors to submit their claims and share, on a *pro rata* basis, in the recovery of Trust Assets. (Id.).

On September 4, 2015, the Court entered the "Consent Injunction and Agreed Order Establishing PACA Claims Procedure" [24] (the "September 4th Order"). The September 4th Order provides that the Court exercise exclusive *in rem* jurisdiction over CRISP's PACA Trust Assets, and further provides that any creditor who seeks to assert a claim to the Trust Assets must assert its claim in this action. The September 4th Order also provides: "Pending further orders of this Court, no banking institution . . . or other organization/entity (including, without limitation, AgriFact [ ]) holding funds for [CRISP] shall pay, transfer, or permit assignment or withdrawal of any existing PACA trust assets held on behalf of [CRISP]." (Sept. 4th Order ¶ 5). The September 4th Order set a hearing for October 22, 2015, to finalize and resolve any objections to the proposed PACA claims procedure.

On October 13, 2015, AgriFact filed its objections to the September 4th Order. AgriFact argued, among other things, that Paragraph 5 of the

September 4th Order does not apply to the Receivables, and their proceeds, that were "factored" to AgriFact.

On October 22, 2015, the Court conducted a hearing to confirm the proposed PACA claims procedure. At the hearing, the Court considered AgriFact's objections and clarified that, under the terms of the September 4th Order, AgriFact is enjoined from transferring or otherwise expending any funds that it received from invoices it obtained from CRISP pursuant to the Factoring Agreement (the "Injunction"). The Court permitted AgriFact to file a motion to modify the Injunction, including to determine whether the Receivables are Trust Assets. The Court continued the hearing to January 14, 2016, to finalize and resolve objections to the proposed PACA claims procedure.

On October 28, 2015, and November 13, 2015, AgriFact moved for reconsideration of the Injunction. ([54], [72]). AgriFact argued that it is entitled to keep the Receivables, and their proceeds, because it purchased the Receivables from CRISP, the purchase was "commercially reasonable," and it did not breach the PACA Trust. AgriFact thus contended that the Receivables, and any amounts collected from them, are not Trust Assets. AgriFact argued further that, even if the Receivables are Trust Assets, the Court should modify the Injunction to reduce the amount of funds AgriFact is enjoined from using. Plaintiff argued the Receivables

were not sold to AgriFact and thus they remained PACA Trust Assets, subject to the PACA Creditors' priority claims.

On December 31, 2015, the Court denied in part and granted in part AgriFact's Motions for Reconsideration of the Injunction.  The Court found that the Factoring Agreement did not function as a true sale of the Receivables to AgriFact, and because they remained Trust Assets, the Receivables and their proceeds were required to be made available for payment first to CRISP's unpaid PACA Creditors, including Plaintiff.  (Dec. 31st Order at 25-26).  The Court thus concluded that Plaintiff showed a substantial likelihood of success on the merits of its claim to recover Trust Assets from AgriFact.  The Court also found (i) that Plaintiff, and the other PACA Creditors, will suffer irreparable harm in the absence of the Injunction, including because the facts support that Trust Assets have been dissipated; (ii) that, in view of CRISP's closing, the threatened injury of being unable to recover the Trust Assets is substantial and outweighs the potential harm to AgriFact; and (iii) that, because the PACA trust is intended to provide statutory protection for unpaid Produce supplies, the protection of Trust Assets in the form of the Injunction serves the public interest.  (Id. at 27 & n. 16).  The Court denied AgriFact's Motions for Reconsideration to the extent AgriFact sought to dissolve the Injunction against it.  (Id. at 27).  The Court concluded, however, that the Injunction was required to be

modified to reflect only the amount of funds that AgriFact may be required to disgorge[3]—that is, the amount of funds necessary to satisfy in full the unpaid PACA creditors' claims, up to the limit of Trust Assets AgriFact held while the PACA creditors remained unpaid. (Id. at 27-28).[4] The Court thus required AgriFact "to maintain funds in a separate, segregated account, sufficient to satisfy in full the unpaid PACA creditors' claims, which [at that time] appear[ed] to total $1,684,523.29." (Id. at 29).

On January 5, 2016, AgriFact moved for reconsideration of the Court's December 31st Order, requesting a reduction in the amount required to be set aside. AgriFact does not challenge the Court's finding that, even after factoring, the Receivables remained Trust Assets and their proceeds were required to be made available for payment first to CRISP's unpaid PACA creditors, including Plaintiff. Instead, AgriFact argues that reconsideration is necessary to correct a factual

---

[3]  The Injunction originally enjoined AgriFact from transferring or otherwise expending any funds that it received from CRISP under the Factoring Agreement.

[4]  The total amount of Trust Assets AgriFact held—that is, the amount of funds AgriFact retained for itself after it collected on the Receivables—is not clear from the record. To the extent AgriFact continues to argue that it never held $1.6 million in Trust Assets because it paid CRISP over $10.8 million during their factoring relationship, (see Mot. Recons. [99] at 6-7), the argument ignores the Court's finding that the Factoring Agreement did not function as a true sale, and thus the Receivables, and the proceeds from them, continued to be Trust Assets. As a result, the amounts advanced to CRISP did not reduce the value of the Trust Assets. (See Dec. 31st Order at 28-29) (citing Nickey Gregory Co., LLC v. AgriCap, LLC, 597 F.3d 591, 607 (4th Cir. 2010)).

"misunderstanding" regarding AgriFact's cash on hand, specifically, that AgriFact had at least $1.6 million on hand that could be transferred to a separate, segregated account. AgriFact represents that its "factoring activities for all of its clients—including CRISP—are and were conducted in its operating account" (the "Operating Account") and "[t]herefore, any 'PACA Trust Assets' at issue in this case were confined to that [O]perating [A]ccount." (Reply [149] at 3). AgriFact then "created a second, separate, account into which it [transferred from the Operating Account] $115,265.58 in known and identifiable CRISP PACA Trust Assets." (Id. at 3). After the transfer, the balance in AgriFact's Operating Account, on December 31, 2015, was $28,356.67. (Id. at 4).[5] AgriFact asserts that the Operating Account now consists of "monies indisputably received from non-CRISP clients, and therefore not part of the *res* being enjoined here." (Mot. at 4). AgriFact asks the Court to clarify that the Injunction applies only to the extent of the identifiable CRISP PACA Trust Assets in AgriFact's possession, that is, that the Injunction does not apply to all funds in AgriFact's possession, such as those in the Operating Account which were received from other customers and subject to their PACA trusts, and that the Injunction does not require AgriFact to obtain from its

---

[5] Due to the nature of AgriFact's business, the balance in the Operating Account fluctuates daily. On December 31, 2015, when the Court issued its Order, the balance was $28,356.67. ([99.1] at 11). Just five (5) days later, on January 5, 2016, the balance was $148,360.13. (Id.).

8

investors new, non-CRISP funds to satisfy the set-aside amount.

On January 14, 2016, the Court confirmed the PACA claims procedure proposed in the September 4th Order, as modified by the Court's October 23, 2015, Scheduling Order [42].  ([115]).[6]  As of the date of this Order, the total principal amount of alleged PACA claims asserted in this case is $1,878,753.13.[7]  (See PACA Trust Chart [321]; Withdrawal of Claim by Eclipse Berry Farm [333]).

## II.   DISCUSSION

### A.   Legal Standard

A district court has discretion to revise or reconsider interlocutory orders at any time before final judgment has been entered.  See Fed. R. Civ. P. 54(b); see also Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1315 (11th Cir. 2000).  The Court does not reconsider its orders as a matter of routine practice.  See LR 7.2 E, NDGa.  A motion for reconsideration is appropriate only where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.  See Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999); Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga.

---

[6] The Court also modified the September 4th Order to correct a typographical error.

[7] The amount may be adjusted based on objections to the claims filed.

1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).  A motion for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented in the previously-filed motion.  Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003); see also Pres. Endangered Areas, 916 F. Supp. at 1560 ("A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time.").

To be eligible for preliminary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, a movant must establish each of the following elements: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.  See Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d 154, 159 (11th Cir. 1990) (same preliminary injunction elements apply in PACA context).  Preliminary injunctive relief is a drastic and extraordinary remedy which should not be granted unless the movant can clearly establish each of the four elements.  Four Seasons Hotels & Resorts v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003).

B. <u>Analysis</u>

In its Motion, AgriFact correctly observes that, at the time the Court issued its December 31st Order, the Court was not aware that AgriFact had significantly less than $1.6 million in cash on hand, regardless of the source of the funds. This is because the parties failed to identify the amount of funds, and specifically, the amount of CRISP PACA Trust Assets, currently in AgriFact's possession. Instead, the parties focused on whether the Receivables, and their proceeds, remained Trust Assets after they were factored. AgriFact's litigation position—that the Injunction did not apply to AgriFact because the Factoring Agreement resulted in a "sale" of the Receivables, and thus AgriFact never "held" any Trust Assets—obscured the issue AgriFact raises now as a basis for reconsideration.

In this case, the Court is exercising *in rem* jurisdiction over the CRISP PACA Trust Assets, including the Trust Assets under CRISP's control, or held by a third party, such as AgriFact. (Sept. 4th Order at 3 & ¶¶ 1-3). The Injunction applies only to enjoin the transfer or use of CRISP PACA Trust Assets. To the extent AgriFact commingled, in its Operating Account, CRISP PACA Trust Assets with funds from its other customers, the record now is that AgriFact "created a second, separate, account into which it [transferred from the Operating Account] the $115,265.58 in known and identifiable CRISP PACA Trust Assets." (Reply at 3).

11

Plaintiff does not argue, and it does not appear, that AgriFact currently has any CRISP PACA Trust Assets in its possession, including in the Operating Account, other than the $115,265.58 segregated in the separate account it created. See, e.g., Six L's Packing Co. v. W. Des Moines State Bank, 967 F.2d 256, 258 (8th Cir. 1992) ("[T]he mere fact that non-trust funds were temporarily parked in an account containing trust funds is not enough to convert those non-trust funds into trust assets, as it is permissible to commingle PACA trust assets with non-trust assets.").[8]

---

[8] To the extent Plaintiff appears to doubt the adequacy of AgriFact's disclosure of available assets and argues that at least some of the funds in the Operating Account may be CRISP PACA Trust Assets, the Court permitted Plaintiff to take discovery on these issues and submit its objections to the Court limiting the Injunction to the CRISP PACA Trust Assets in AgriFact's possession. (See Tr. of Jan. 14, 2016, Hr'g [120] at 66). Plaintiff declined to do so.

Because the CRISP PACA Trust Assets in AgriFact's possession have been reasonably identified and segregated from the commingled Operating Account, the lowest intermediate balance rule ("LIBR") does not apply. The LIBR "attempts to divide tainted and untainted money by considering, where a set amount of proceeds is deposited into an account and commingled with other funds, 'the account to be "traceable proceeds" to the extent of [the deposited proceeds] as long as the account balance never falls below that sum.'" United States v. Rothstein, 717 F.3d 1205, 1214 (11th Cir. 2013) (quoting United States v. Banco Cafetero Panama, 797 F.2d 1154, 1159 (2d Cir. 1986)). Even if, as Plaintiff appears to suggest, the Operating Account contains funds that arguably could be CRISP PACA Trust Assets, applying the LIBR is not appropriate in cases where, as here, the assets of several similarly-situated customers are commingled into one account, including because it could result in attributing funds to one customer at the expense of another. See, e.g., Gulfstream Aero. Corp. v. Calascibetta, 142 F. App'x 562, 566-567 (3d Cir. 2005) (pro rata distribution, rather than LIBR, was proper method for distributing funds in debtor's account because one creditor's assets were commingled with assets of many other similarly situated creditors; stating, "[w]hile

The Court thus applies the four-part test for granting injunctive relief to determine if the Injunction should extend beyond the $115,265.58 in identifiable CRISP PACA Trust Assets, by enjoining all funds currently, or which may in the future be, in AgriFact's possession.

### 1. Likelihood of Success on the Merits

AgriFact does not challenge the Court's conclusion that Plaintiff has shown a substantial likelihood of success on the merits of its claim to recover Trust Assets from AgriFact, and the Court finds that the first element is satisfied. See Frio Ice, 918 F.3d at 159; Schiavo, 430 F.3d at 1225-26.

### 2. Irreparable Injury

There is no evidence to show that AgriFact is actively dissipating its assets such that Plaintiff and the other PACA creditors will suffer irreparable harm, including by being unable to recover from AgriFact, if all of the funds in AgriFact's possession are not enjoined. The second element is not satisfied here. See Frio Ice, 918 F.3d at 159; Schiavo, 430 F.3d at 1225-26; cf. Ferrero v. Assoc. Materials Inc.,

---

the LIB[R] is helpful in identifying one party's assets commingled with the trustee, its value is significantly lessened when the assets are commingled with many other similarly situated individuals") (citing Goldberg v. N.J. Lawyers' Fund for Client Prot., 932 F.2d 273, 280 (3d Cir. 1991) ("In general, courts favor *pro rata* distribution of funds when such funds are claimed by creditors of like status.")).

923 F.2d 1441, 1449 (11th Cir. 1991) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.").[9]

### 3. Threatened Injury Outweighs Harm

The Court also finds that the threatened injury to Plaintiff and the PACA creditors of being unable to recover from AgriFact does not outweigh the harm AgriFact will suffer if it is enjoined from using any funds in its Operating Account. Because the Operating Account now consists only of funds obtained from AgriFact's customers other than CRISP, these funds are likely subject to the other customers' PACA trusts. Enjoining the transfer or use of these funds could cause AgriFact to breach the PACA trusts of its other customers and significantly impact AgriFact's relationship with its customers, and its ability generally to conduct its business. See Ferrero, 923 F.2d at 1449 (in evaluating whether the threatened injury to movant outweighs the damage injunction may cause non-movant, crediting "the problem of the lost goodwill and long-time customers as well as the likelihood of layoffs should [defendant] lose substantial business"). The third element is not satisfied here. See Frio Ice, 918 F.3d at 159; Schiavo, 430 F.3d at 1225-26.

---

[9] After the December 31st Order, AgriFact's investors provided approximately $1.6 million in new funds, unrelated to CRISP or other AgriFact customers, which were deposited into a third, separate account. AgriFact has kept these funds segregated from the Operating Account and the CRISP segregated account. There is no evidence the funds in the CRISP segregated account are being dissipated. (See Reply at 5).

      4.     Public Interest

Finally, the Court concludes that enjoining all of the funds remaining in AgriFact's Operating Account would not serve the public interest. The PACA trust is intended to provide statutory protection for unpaid Produce suppliers. See 7 U.S.C. § 499e(c)(1)).[10] While the protection of CRISP PACA Trust Assets in the form of the Injunction serves the public interest, see id., the record now is that AgriFact's Operating Account contains only funds from AgriFact's other customers. Enjoining the transfer or use of these non-CRISP PACA Trust Assets could breach the PACA trusts of AgriFact's other customers and effectively elevate the status of CRISP's PACA Trust above the PACA trusts of AgriFact's other customers. This goes against the public interest in ensuring that Produce suppliers are promptly paid. Cf. Frio Ice, 918 F.2d at 159 ("Segregation of only part of the trust solely to accommodate a beneficiary's singular interest is inappropriate because the statutory trust exists for the benefit of all unpaid produce sellers.").

---

[10]    7 U.S.C. § 499e(c)(1) states: "It is hereby found that a burden on commerce in [Produce] is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for [Produce] purchased . . . , encumber or give lenders a security interest in, such [Produce], or on inventories of food or other products derived from such [Produce], and any receivables or proceeds from the sale of such [Produce] or products, and that such arrangements are contrary to the public interest. This subsection [providing for the establishment of the PACA trust] is intended to remedy such burden on commerce in [Produce] and to protect the public interest."

The fourth element is not satisfied here. See See Frio Ice, 918 F.3d at 159; Schiavo, 430 F.3d at 1225-26.

In evaluating the four (4) preliminary injunction factors, the Court finds that Plaintiff and the PACA Creditors are likely to succeed on the merits of their claims, and the first factor is met. The Court concludes, however, that (i) Plaintiff and the PACA Creditors will not suffer irreparable harm if the Injunction is limited to only the CRISP PACA Trust Assets in AgriFact's possession; (ii) the threatened injury to Plaintiff and the PACA Creditors does not outweigh the potential harm to AgriFact; and (iii) enjoining all of AgriFact's funds, including non-CRISP PACA Trust Assets, would not serve the public interest. See Schiavo, 430 F.3d at 1225-26; Frio Ice, 918 F.2d at 159. The record does not support that the Injunction should extend beyond the CRISP PACA Trust Assets to all funds in AgriFact's possession.

The Court's December 31st Order is modified to reflect that AgriFact is required to maintain in a separate, segregated account, all identifiable CRISP PACA Trust Assets in AgriFact's possession.[11] This modification of the Injunction does not affect the amount for which AgriFact may be liable if Plaintiff, and the other PACA creditors, are successful on the claims they have asserted against AgriFact.

---

[11] Based on the current record in this case, this amount appears to be at least $115,265.58.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that AgriFact's Emergency Motion Requesting Reduction in the Ordered Set Aside Amount [99] is **GRANTED**.  The Injunction is modified to reflect that AgriFact is required to maintain funds in a separate, segregated account, in the amount of identifiable CRISP PACA Trust Assets in AgriFact's possession.

**SO ORDERED** this 6th day of September, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE