# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CLASSIC HARVEST LLC,<br><br>    Plaintiff,<br><br>v.<br><br>FRESHWORKS LLC, et al.,<br><br>    Defendants. | 1:15-cv-2988-WSD |
| CRISP HOLDINGS, LLC d/b/a<br>FRESH ROOTS,<br><br>    Third Party Plaintiff,<br><br>v.<br><br>US FOODS, INC.,<br><br>    Third Party Defendant. | |

## OPINION AND ORDER

This matter is before the Court on Third-Party Defendant US Foods, Inc.'s ("US Foods") Motion to Dismiss [383] Crisp Holdings, LLC d/b/a Fresh Roots' ("Crisp") Third Party Complaint [336].

## I. BACKGROUND

This is an action under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a, et seq. When perishable agricultural commodities ("Produce") are sold, PACA imposes a nonsegregated, "floating" trust, in favor of

Produce sellers, on the Produce sold, products derived from the Produce, "and any receivables or proceeds from the sale of such" Produce or product derived from it. 7 U.S.C. § 499e(c)(2).  PACA requires the buyer to hold the trust assets "in trust for the benefit of all unpaid suppliers or sellers of such [Produce]," "until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers . . . ."  Id.  A trust beneficiary may bring an action in federal court "to enforce payment from the trust."  7 U.S.C. § 499e(c)(5).

Crisp bought Produce on credit from wholesale Produce suppliers, including Classic Harvest, LLC ("Classic Harvest").  Crisp then resold the Produce to its customers, including US Foods, on credit, generating accounts receivable ("Receivables").  Under PACA, Crisp was required to hold, in trust (the "PACA Trust"), the Produce, products derived from the Produce, and the Receivables or proceeds from the sale of the Produce (the "Trust Assets"), for the benefit of Crisp's unpaid Produce suppliers, including Classic Harvest.

On August 25, 2015, Classic Harvest filed suit against Crisp to recover payment for Produce that Classic Harvest sold to Crisp.  Classic Harvest asserts, among others, claims under PACA against Crisp, its principals and parent company, for breach of their duties under PACA and to enforce the PACA Trust.

On September 4, 2015, the Court entered the "Consent Injunction and Agreed Order Establishing PACA Claims Procedure" [24] (the "September 4th Order"). The September 4th Order provides for the Court to exercise exclusive *in rem* jurisdiction over Crisp's PACA Trust Assets and directs counsel for Crisp to preserve and collect Crisp's PACA Trust Assets, including any unpaid Receivables. The September 4th Order further establishes a framework for Crisp's other unpaid PACA creditors to submit their claims against Crisp in this action and share, on a *pro rata* basis, in the recovery of Crisp's PACA Trust Assets.

On August 16, 2016, Crisp filed its Third Party Complaint [336] ("Complaint") against US Foods asserting, *inter alia*, claims for Declaratory Judgment (Count IV), Breach of the PACA Trust (Count V), Breach of Duty as PACA Trustee (Count VI), and Conversion and Unlawful Retention of PACA Trust Assets (Count VII).[1] Crisp claims US Foods wrongfully, and in violation of PACA, deducted $1,077,516.95 in product promotional allowances from amounts it owed to Crisp.

Under the terms of the parties' Vendor Program Agreement ("VPA") [336.2], US Foods agreed to purchase Produce from Crisp, and Crisp agreed to pay

---

[1] Crisp also asserts claims for Enforcement of the PACA Trust (Count I), Failure to Pay Promptly (Count II), and Breach of Contract (Count III), based on US Foods' alleged failure to pay in full certain invoices. Crisp seeks to recover $115,405.09, the remaining balance on these invoices, plus interest and collection costs. US Foods has not moved to dismiss Counts I-III.

to US Foods a promotional allowance based on the amount of Produce US Foods purchased from Crisp. The promotional allowance includes a Corporate Marketing Allowance ("CMA") which was "intended to be used for Support Office and Regional Marketing Activities." (VPA at 3, 7).[2] The VPA provides:

> On or about the 25th day following the end of each calendar month, USF will (i) calculate the NPA, CMA, and LMA and/or LPA. . . due; (ii) post the billing amount to the supplier web portal that [Crisp] will have access to . . . , and (iii) process a deduction in that amount against any outstanding or future trade payable.

(Id. at 7). This allowed US Foods to reduce the amount it owed Crisp on invoices by the amount of the promotional allowance owed to US Foods by Crisp under the VPA.

On October 14, 2016, US Foods moved to dismiss Counts IV through VII of Crisp's Complaint for failure to state a claim for relief. (Mot. Dismiss [383]). US Foods argues is that it cannot be liable for the claimed PACA violations because it was permitted to deduct the promotional allowance from amounts it owed Crisp, and thus the promotional allowance was not subject to the PACA Trust.

---

[2] The promotional allowance amount also included the "NPA," "LMA" and "LPA." (See VPA at 7). The Vender Program Agreement does not define these allowances and the parties do not indicate for what purpose they were collected.

## II. DISCUSSION

### A. Legal Standard

On a motion to dismiss, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010). Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)). Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than

the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

B. PACA Trust Framework

Section 499e(c)(2) imposes a nonsegregated "floating" trust on the Produce sold, products derived from the Produce, "and any receivables or proceeds from the sale of such [Produce] or product." 7 U.S.C. § 499e(c)(2). PACA requires the Produce buyer to hold the trust assets "in trust for the benefit of all unpaid suppliers or sellers of such [Produce]," "until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers . . . ." 7 U.S.C. § 499e(c)(2).

"PACA trust beneficiaries are entitled to full payment before trustees may lawfully use trust funds to pay other creditors." C.H. Robinson Co. v. Alanco Corp., 239 F.3d 483, 488 (2d Cir. 2001). The trust allows Produce sellers "to recover against the purchasers and puts the sellers in a position superior to all other creditors." See Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997) (citing Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1067 (2d Cir. 1995)). The PACA trust "imposes liability on a trustee . . . who uses the trust

6

assets for any purpose other than repayment of the supplier." Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997).

Here, US Foods argues is that it cannot be liable for the claimed PACA violations because it was permitted to deduct the promotional allowance from amounts it owed Crisp, and thus the promotional allowance was not subject to the PACA Trust. The issue turns on interpretation of the VPA.

C. Contract Interpretation

The VPA is governed by Delaware law. (VPA at 7). See also Koch Bus. Holdings, LLC v. Amoco Pipeline Holding Co., 554 F.3d 1334, 1338 (11th Cir. 2009) (applying Delaware law where the parties' contract provided Delaware law governed). Under Delaware law, the construction of a contract is a question of law. Rhone-Poulenc Basic Chem. Co. v. Am. Mot. Ins. Co., 616 A.2d 1192, 1195 (Del. 1992). "[W]hen interpreting a contract, the role of a court is to effectuate the parties' intent." AT&T Corp. v. Lillis, 953 A.2d 241, 252 (Del. 2008). Under Delaware's objective theory of contract interpretation, a "court looks to the . . . words found in the written instrument" to determine the intent of the parties in entering into the agreement. Sassano v. CIBC World Mkts. Corp., 948 A.2d 453, 462 (Del. Ch. 2008). The court interprets these words according to their "common or ordinary meaning" from the point of view of an "objectively reasonable

third-party observer." Id. Even the literal meaning of a contract must be rejected if it "would be clearly unreasonable and yield an arbitrary result." Citadel Holding Corp. v. Roven, 603 A.2d 818, 882 (Del. 1992); see also Beanstalk Grp., Inc. v. AM Gen. Corp., 283 F.3d 856, 860 (7th Cir. 2002) ("[A] contract will not be interpreted literally if doing so would produce absurd results, in the sense of results that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed to seek.").

Extrinsic evidence may only be introduced if an ambiguity exists in the language of the contract. A contract provision is not ambiguous simply because the parties disagree on its meaning. E.I. du Pont de Nemours & Co. v. Allstate Ins. Co., 693 A.2d 1059, 1060 (Del. 1997). Contract language is ambiguous only if it is reasonably or fairly susceptible of two or more different interpretations. Lamberton v. Traveler's Indem. Co., 325 A.2d 104, 106 (Del. Super. 1974).

D.   Analysis

The parties dispute whether the promotional allowances were deducted from Trust Assets. The VPA provides that US Foods will calculate the amount of the promotional allowance and "process a deduction in that amount against any outstanding or future trade payable." (VPA at 7). Thus, the issue depends on whether the "outstanding or future trade payable" is a Trust Asset.

A "payable" is "an account reflecting a balance owed to a creditor." Account Payable, Black's Law Dictionary, (10th ed. 2014) (stating, "account payable" is "often shortened to *payable*); see also Payable, Black's Law Dictionary, (10th ed. 2014) (defining "payable" as (Of a sum of money or a negotiable instrument) that is to be paid).  Under the VPA, then, the term "payable" encompasses any outstanding or future amount US Foods owes to Crisp—regardless of whether, or to what extent, the payable is subject to Crisp's PACA trust.  When Crisp sold Produce to US Foods, Crisp was required to hold, in trust, the receivable or proceeds from the sale of the Produce, for the benefit of Crisp's unpaid Produce suppliers.  See 7 U.S.C. § 499e(c)(2).  Because the PACA trust applies only to the extent Crisp must pay its unpaid Produce suppliers, it does not follow that all "outstanding or future trade payables"—amounts US Foods owes to Crisp—are necessarily subject to Crisp's PACA trust.  See Restatement (Second) of Trusts § 76 cmt. a, illus. 5 (Am. Law Inst. 1959).[3]

---

[3] Illustration 5 states: "A deposits $1000 in a savings bank.  He declares himself trustee of the deposit in trust to pay B $500 out of the deposit, reserving the power to withdraw from the deposit any amount in excess of $500.  A trust of the deposit is created of which B is beneficiary to the extent of $500, and A can properly withdraw any amount in excess of $500." Restatement (Second) of Trusts § 76 cmt. a, illus. 5.  The Restatement of Trusts is a compelling resource in the absence of case law addressing the extent of a PACA trust beneficiary's interest in the trust assets.  See Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997) (General principles of trust law govern PACA trust, unless the principle conflicts with PACA).

Consider this example: Grower sells Produce to Crisp, on credit, for $100. Crisp then sells the Produce to US Foods, generating a receivable for $120. Under PACA, Crisp is required to hold $100 in trust for Grower because that is the amount Crisp owes to Grower. When US Foods pays Crisp the $120, only $100 is subject to the PACA trust for the benefit of Grower. The remaining $20 belongs to Crisp, free of trust. Thus, if Crisp owes a $5 promotional allowance to US Foods, US Foods can simply pay Crisp $115 ($120 owed, minus $5 promotional allowance owed) because the $5 used to reduce the invoice was not a Trust Asset.



Put another way, the $5 invoice deduction does not violate PACA because the $5 promotional allowance does not exceed the amount Crisp received free of the trust ($20). That is, the deduction does not reduce the amount Crisp held in trust for Grower ($100).

In its Complaint, Crisp seeks to recover $1,077,516.95, the total amount of all promotional allowances deducted throughout the course of the parties' relationship. Pursuant to the VPA, US Foods deducted the promotional allowance amount "against any outstanding or future trade payable." That US Foods owed Crisp a certain amount that Crisp was required to hold in trust for the benefit of its unpaid PACA creditors, does not necessarily mean that the all amounts payable to Crisp were PACA Trust Assets, or that US Foods paid Crisp less than the amount subject to the PACA Trust. At this stage in the litigation, based on the current record, the Court cannot conclude what amount of the "outstanding or future trade payables" US Foods owed to Crisp was a PACA Trust Asset and whether, or to what extent, a promotional allowance may have been deducted from Trust Assets. Assuming the factual allegations of the Complaint are true and giving Crisp the benefit of reasonable factual inferences, the Court finds that Crisp alleges, on the face of its Complaint, a plausible claim for relief for breach of the PACA Trust based on its theory that promotional allowances were deducted from Trust Assets, and US Foods' Motion to Dismiss is denied.

E. Violation of PACA: Breach of the PACA Trust (Count V)

US Foods next argues that, even if the promotional allowances were deducted from Trust Assets, Crisp fails to state a claim against it for breach of

trust. In Count V, Crisp, on behalf of the PACA Trust Beneficiaries, asserts a claim against US Foods for breach of the PACA Trust under Restatement (Second) of Trusts § 323. Section 323 provides, in pertinent part:

> (1) . . . if a claim against a third person is held in trust, the third person can set off a claim held by him against the trustee personally, provided that the claims could be set off against each other if held free of trust and that when each of the claims arose he had no notice that the claim against him was held in trust.

Restatement (Second) of Trusts § 323(1).

Crisp alleges that "[o]n the date of each sale subject to this claim, Crisp delivered produce to US Foods, presented to US Foods invoices containing the statutory language stated in 7 U.S.C. § 499e(c)(4) notifying US Foods that the sale was subject to the PACA trust." (Compl. ¶ 46). Crisp asserts that, "[a]t the time US Foods['] $1,077,516.95 claim arose against Crisp for payment of [promotional allowances], US Foods had notice that Crisp's claims against US Foods for payment of produce were held subject to the PACA trust." (Id. at 48). Assuming, without deciding, that the promotional allowances were deducted from Trust Assets, Crisp alleges facts sufficient to support a claim for breach of trust based on Section 323.

US Foods appears to move to dismiss Count V because, it argues, even if it received PACA Trust Assets, Crisp fails to show that US Foods had notice of the

breach of trust. US Foods relies on C.H. Robinson Co. v. Trust Co. Bank, N.A., 952 F.2d 1311 (11th Cir. 1992) to support that Crisp must show that US Foods had knowledge of breach of trust. In C.H. Robinson, unpaid Produce sellers asserted claims under PACA against the Produce buyer and two banks to whom the buyer made loan payments using trust funds. The Eleventh Circuit held that the banks were entitled to keep the funds because they were merely third party transferees of the trust assets, and "a transferee takes property free of trust if he received it for value and without notice of the breach of trust." C.H. Robinson, 952 F.2d at 1314. The Eleventh Circuit applied Restatement (Second) of Trusts § 296, which states: "If the trustee transfers trust property in breach of trust to a transferee for value, the transferee takes free of the trust although he had notice of the existence of the trust, unless he has notice that the trustee is committing a breach of trust in making the transfer." Id. (quoting Restatement (Second) of Trusts § 296).

Here, Crisp's theory of liability depends on Section 323, which applies to third parties who participate in a breach of trust, other than by merely receiving a transfer of trust assets. Crisp alleges that, when US Foods' obligation to pay Crisp for Produce, and when Crisp's obligation to pay the promotional allowance amounts to US Foods, arose, US Foods had notice that Crisp's claim against it was held in trust for Crisp's PACA trust beneficiaries. Crisp asserts that US Foods

deducted an obligation that Crisp itself owed to US Foods, against an obligation that US Foods knew that it owed to Crisp for the benefit of Crisp's PACA creditors. These facts, if true, are sufficient to support that US Foods participated in the breach of trust, not that it merely received a transfer of trust assets without knowledge of the breach of trust. C.H. Robinson does not apply. Compare C.H. Robinson, 952 F.2d at 1314 ("[A] *transferee* takes property free of trust if he received it for value and without notice of the breach of trust.") (emphasis added) and id. ("'If the trustee transfers trust property in breach of trust to a transferee for value, the transferee takes free of the trust although he has notice of the existence of the trust, unless he has notice that the trustee is committing a breach of trust in making the transfer.'") (quoting Restatement (Second) of Trusts § 296) with Restatement (Second) of Trusts § 323 ("[I]f a claim against a third person is held in trust, the third person can set off a claim held by him against the trustee personally, provided that the claims could be set off against each other if held free of trust and that when each of the claims arose he had no notice that the claim against him was held in trust."). Assuming the factual allegations of the Complaint are true and giving Crisp the benefit of reasonable factual inferences, the Court finds that Crisp alleges, on the face of its Complaint, a plausible claim for relief for breach of the PACA Trust and US Foods' Motion to Dismiss Count V is denied.

F.      Violation of PACA: Breach of Duties as PACA Trustee (Count VI)

In Count VI, Crisp asserts a claim against US Foods, under the Restatement (Second) of Trusts § 250, for breach of the duty US Foods owed to Crisp as PACA Trustee. The Restatement (Second) of Trusts § 250 provides: "The trustee is not entitled to a charge on a beneficiary's interest in the trust estate to secure a liability of the beneficiary to the trustee not connected with the administration of the trust, *unless the beneficiary contracts to give him such a charge.*" Restatement (Second) of Trusts § 250 (emphasis added).

In its Complaint, Crisp alleges that "US Foods, as a PACA Trustee, cannot set off US Foods[' claim for promotional allowances] against Crisp from Crisps' [sic] interest in US Foods [sic] PACA trust, unless Crisp gave US Foods this right." (Compl. ¶ 54). Crisp asserts that it "never gave US Foods authority to set off its interest in [US Foods'] PACA trust to pay any amounts Crisp allegedly owed US Foods for [promotional allowances] and credits." (Id. ¶ 55). Under the terms of the VPA, however, Crisp agreed to permit US Foods to "process a deduction in that amount [of promotional allowances] against any outstanding or future trade payable." (VPA at 7). Crisp thus permitted US Foods to deduct the promotional allowances from amounts US Foods owed to Crisp, regardless of whether they were subject to PACA. See infra Section II.D. Crisp, as the

15

beneficiary of US Foods' PACA trust, granted US Foods the right to set off its claim for promotional allowances against Crisp's interest in US Foods' PACA trust. Crisp fails to state in its Complaint a plausible claim against US Foods for breach of US Foods' duty to Crisp. US Foods' Motion to Dismiss Count VI is granted.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that US Foods' Motion to Dismiss [383] is **GRANTED IN PART.** It is **GRANTED** with respect to Count VI and Count VI is **DISMISSED.** It is **DENIED** with respect to Counts IV, V and VII.

**SO ORDERED** this 28th day of April, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE