# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CLASSIC HARVEST LLC,<br><br>        Plaintiff,<br><br>v.<br><br>FRESHWORKS LLC, et al.,<br><br>        Defendants. | 1:15-cv-2988-WSD |
| CRISP HOLDINGS, LLC d/b/a<br>FRESH ROOTS,<br><br>        Third Party Plaintiff,<br><br>v.<br><br>US FOODS, INC.,<br><br>        Third Party Defendant. | |

## OPINION AND ORDER

This matter is before the Court on Third-Party Defendant US Foods, Inc.'s ("US Foods") Motion to Strike [464] Crisp Holdings, LLC d/b/a Fresh Roots' ("Crisp") Amended Third Party Complaint [454] ("Amended Complaint"). Also before the Court is Crisp's Motion for Leave to File its Amended Third Party Complaint [474] ("Motion to Amend").

## I. BACKGROUND

This is an action under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a, et seq. When perishable agricultural commodities ("Produce") are sold, PACA imposes a nonsegregated, "floating" trust, in favor of Produce sellers, on the Produce sold, products derived from the Produce, "and any receivables or proceeds from the sale of such" Produce or product derived from it. 7 U.S.C. § 499e(c)(2). PACA requires the buyer to hold the trust assets "in trust for the benefit of all unpaid suppliers or sellers of such [Produce]," "until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers . . . ." Id. A trust beneficiary may bring an action in federal court "to enforce payment from the trust." 7 U.S.C. § 499e(c)(5).

Crisp bought Produce on credit from wholesale Produce suppliers, including Classic Harvest, LLC ("Classic Harvest"). Crisp then resold the Produce to its customers, including US Foods, on credit, generating accounts receivable ("Receivables"). Under PACA, Crisp was required to hold, in trust (the "PACA Trust"), the Produce, products derived from the Produce, and the Receivables or proceeds from the sale of the Produce (the "Trust Assets"), for the benefit of Crisp's unpaid Produce suppliers, including Classic Harvest.

2

On August 25, 2015, Classic Harvest filed suit against Crisp to recover payment for Produce that Classic Harvest sold to Crisp. Classic Harvest asserts, among others, claims under PACA against Crisp, its principals and parent company, for breach of their duties under PACA and to enforce the PACA Trust.

On September 4, 2015, the Court entered the "Consent Injunction and Agreed Order Establishing PACA Claims Procedure" [24] (the "September 4th Order"). The September 4th Order provides for the Court to exercise exclusive *in rem* jurisdiction over Crisp's PACA Trust Assets and directs counsel for Crisp to preserve and collect Crisp's PACA Trust Assets, including any unpaid Receivables. The September 4th Order further establishes a framework for Crisp's other unpaid PACA creditors to submit their claims against Crisp in this action and share, on a *pro rata* basis, in the recovery of Crisp's PACA Trust Assets. The Court evaluated the claims filed by the PACA Creditors in this case and approved claims in the total amount of $1,860,344.02. (See May 31, 2017, Order [436]; Updated PACA Trust Chart [439.1]).[1]

On August 16, 2016, Crisp filed its Third Party Complaint [336] ("Complaint") against US Foods asserting claims for Enforcement of the PACA

---

[1] This amount includes, for some PACA Creditors, the amount of attorneys' fees and interest claimed as of the date they filed their Proof of Claim in this action. A portion of Market Express's claim, in the amount of $136,835.50, requires further proceedings.

Trust (Count I), Failure to Pay Promptly (Count II), and Breach of Contract (Count III), based on US Foods' alleged failure to pay in full certain invoices.[2] Crisp also asserted claims for Declaratory Judgment (Count IV), Breach of the PACA Trust (Count V), Breach of Duty as PACA Trustee (Count VI), and Conversion and Unlawful Retention of PACA Trust Assets (Count VII), based on US Foods' deduction, from amounts it owed to Crisp, of $1,077,516.95 in product promotional allowances.

On October 14, 2016, US Foods moved to dismiss Counts IV through VII of Crisp's Complaint for failure to state a claim for relief. (Mot. Dismiss [383]).[3]

On April 28, 2017, the Court dismissed Count VI of Crisp's Complaint for failure to state a claim for relief. ([431]). The Court denied US Foods' Motion to Dismiss Counts IV, V and VII. (Id.).

On June 9, 2017, Crisp and US Foods filed their Joint Preliminary Report and Discovery Plan ("JPR"), in which they agreed, among other things, that "[a]mendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law." (JPR [440] at

---

[2] Crisp seeks to recover $115,405.09, the remaining balance on these invoices, plus interest and collection costs.
[3] US Foods did not move to dismiss Counts I-III.

4). The parties also indicated that they did not anticipate any amendments to the pleadings. (Id.).

On June 21, 2017, the Court entered an order approving the parties' JPR. (June 21st Order [445]). The June 21st Order states that the "time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court . . . ." (Id. at 1-2).[4]

On July 21, 2017, Crisp, without seeking US Foods' consent or leave of Court, filed its Amended Third Party Complaint [454] ("Amended Complaint"). In it, Crisp asserts new claims for "Enforcement of the PACA Trust Control of the PACA Trust" (Count VII), Co-Fiduciary Liability under PACA (Count VIII) and Interference with Receipt of Trust Assets (Count IX). Crisp alleges:

- Beginning no later than January 2015, US Foods was made aware that Crisp was not paying its produce suppliers. PACA Trust Beneficiaries of Crisp informed US Foods that Crisp's failure to pay would result in cancellation of shipments to US Foods.

- US Foods, in response to these notifications from Crisp's produce suppliers, began meeting regularly with the Officers, Directors and/or Principals of Crisp to discuss payment to Crisp's produce suppliers.

---

[4] The June 21st Order contained exceptions to the time limits not related to amending the pleadings.

- During these meetings, US Foods would direct Crisp which produce suppliers to pay and when to pay them.

- US Foods caused Crisp to commit a breach of the PACA trust by transferring PACA Trust Assets from Crisp to specific PACA trust beneficiaries, for the benefit of US Foods, in violation of its duties under PACA.

- US Foods directed the priority of which the produce suppliers of Crisp would be paid and therefore controlled the PACA Assets of Crisp.

- Following the direction of US Foods, Crisp failed to make prompt payment in full to some of its produce suppliers from the PACA Trust Assets of Crisp.

- Due to the direction of US Foods, Crisp failed to preserve sufficient amounts of the PACA Trust Assets freely available to fully satisfy all qualified PACA trust claims, such as the PACA Trust beneficiaries' unpaid claims asserted in this action.

- The control exercised by US Foods over the disbursement [of] Crisp's PACA Trust Assets was such that US Foods was a de facto "controlling person" of Crisp's PACA Trust Assets, and therefore, a co-fiduciary of such assets. Such co-fiduciary status under the PACA trust makes US Foods jointly and severally liable to the PACA trust beneficiaries for the dissipation of Crisp's PACA Trust Assets.

(Am. Compl. ¶¶ 16-18, 69-71, 76, 81). Crisp seeks a declaration that US Foods is a co-trustee of the Crisp PACA Trust, and thus US Foods is jointly and severally liable to Crisp's PACA Creditors for Crisp's breach of the PACA Trust.

On August 4, 2017, US Foods moved to strike Crisp's Amended Complaint. (Mot. Strike [464]). US Foods argues that Crisp's Amended Complaint is

untimely under the scheduling order in this case, and Crisp otherwise failed to obtain US Foods' consent, or leave of Court, before filing its Amended Complaint.

On August 18, 2017, Crisp filed its response and, in the alternative, moved for leave to amend its Complaint.[5]  Crisp asserts that its July 21, 2017, Amended Complaint is timely, and leave was not required, because the JPR permits the parties to amend the pleadings within thirty (30) days, and Crisp filed its Amended Complaint within 30 days of the Court's June 21st Order approving the JPR. (Resp. [473] at 1-2).  Crisp argues that, even if the Amended Complaint was not timely, there is good cause to amend the scheduling order because Crisp's counsel was diligent in pursing the amendment.  Crisp asserts that, in June and July, 2017, Crisp's counsel first learned of the facts underlying the new claims asserted in the Amended Complaint.  Crisp argues further that the Court should grant Crisp leave to amend because these newly-asserted claims are plausible and there has been no undue delay, bad faith or dilatory motive, and permitting amendment will not prejudice US Foods.

---

[5]  The Amended Complaint attached to Crisp's Motion to Amend is identical to the Amended Complaint filed on July 21, 2017.

## II. DISCUSSION

### A. Legal Standard

Rule 15 of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).[6] "Although leave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." Maynard v. Bd. of Regents, 342 F.3d 1281, 1287 (11th Cir. 2003); accord Foman v. Davis, 371 U.S. 178, 182 (1962).

The Eleventh Circuit has consistently held that when a party seeks leave to amend a complaint after the deadline designated in a scheduling order, the party must demonstrate good cause under Federal Rule of Civil Procedure 16(b)(4), before the court will consider whether to allow the amendment under Rule 15(a). S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 (11th Cir. 2009); Sosa v. Airprint Sys., 133 F.3d 1417, 1418 n. 2 (11th Cir. 1998) ("[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused."). The "good cause standard

---

[6] It is undisputed that the time for Crisp to amend as a matter of course under Federal Rule of Civil Procedure 15(a)(1) has passed.

8

precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." Sosa, 133 F.3d at 1418.

B. Analysis

1. Motion to Strike the Amended Complaint

On June 9, 2017, Crisp and US Foods filed their JPR, which states that they did not anticipate amending the pleadings, but agreeing that "[a]mendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law." (JPR at 4).

On June 21, 2017, the Court approved the parties' JPR, thus setting the deadline for amendments to the pleadings as July 9, 2017. (June 21st Order).[7]

---

[7] To the extent Crisp argues that the deadline for amendments to the pleadings was July 21, 2017, the JPR states that "[a]mendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is *filed*" will not be accepted. (JPR at 4) (emphasis added). That the Court approved the parties' JPR on July 21, 2017, does not change that the parties *filed* their JPR on June 9, 2017.

The June 21st Order also states that the "time limits for . . . amending the pleadings . . . are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court." (Id. at 1-2). The Federal Rules of Civil Procedure and the Court's Local Rules do not set specific deadlines for amending the pleadings and the parties are bound by their agreement that, if they sought to amend the pleadings, they would do so no later than thirty days after the JPR was filed, that is, no later than July 9, 2017.

9

Crisp's Amended Complaint, filed on July 21, 2017, is untimely under the scheduling order in this case.[8] US Foods' Motion to Strike is granted.

   2.   Motion to Amend

The Court next must determine whether the schedule should be modified to permit the late filing of Crisp's Amended Complaint. "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "To establish good cause, the party seeking the extension must have been diligent." Romero v. Drummond Co., 552 F.3d 1303, 1319 (11th Cir. 2008). The Eleventh Circuit has explained:

> The lack of diligence that precludes a finding of good cause is not limited to a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes. That lack of diligence can include a plaintiff's failure to seek the information it needs to determine whether an amendment is in order.

S. Grouts & Mortars, 575 F.3d at 1241 n.3.

Here, Crisp cannot demonstrate diligence or good cause to excuse the delay in moving to amend its Complaint. On August 18, 2017, almost six (6) weeks after the deadline for amending the pleadings set by the Court's June 21st Order, Crisp

---

[8]   Even if the Court's June 21st Order extended the filing deadline to July 21, 2017, Crisp was still required to comply with Rule 15(a)(2) before filing its Amended Complaint. US Foods agreed, in the JPR, that amendments would be filed by July 9, 2017, and nothing in the Court's June 21st Order authorized Crisp to file an amended complaint without seeking leave of Court.

10

moved to amend its Complaint to include three new claims based on conduct that began in January 2015. (See Am. Compl. ¶¶ 16-18). Crisp alleges:

- Beginning no later than January 2015, US Foods was made aware that Crisp was not paying its produce suppliers. PACA Trust Beneficiaries of Crisp informed US Foods that Crisp's failure to pay would result in cancellation of shipments to US Foods.

- US Foods, in response to these notifications from Crisp's produce suppliers, began meeting regularly with the Officers, Directors and/or Principals of Crisp to discuss payment to Crisp's produce suppliers.

- During these meetings, US Foods would direct Crisp which produce suppliers to pay and when to pay them.

(Am. Compl. ¶¶ 16-18). This alleged misconduct, upon which Crisp now seeks to assert new causes of action, was known to Crisp when Crisp originally filed its Complaint and was known well before the deadline to amend the pleadings. In fact, the alleged misconduct was known to Crisp in January 2015—seven (7) months before this action began—because Crisp itself participated in it.

Crisp does not argue, and it would be illogical to conclude, that Crisp just recently learned about the alleged misconduct—in which Crisp participated—that underlies Crisp's proposed new claims. Rather, a close reading of Crisp's filings shows that the catalyst for Crisp's amendment is that Crisp's *counsel* recently learned that US Foods told Crisp which produce suppliers to pay to benefit US Foods. Crisp asserts that the "information leading to the possibility that new

claims existed against US Foods was *first learned by Counsel* for Crisp from one of the Plaintiffs in June 2017. Shortly thereafter, this information was officially obtained by Crisp from interviews of some of the individual defendants, with their counsel, and from information requests from the Plaintiffs, in July 2017." (Resp. [486] at 3-4; see also Mot. to Amend at 2 ("New information has come to the attention of *Counsel* for Crisp, which establishes additional legal theories for recovery against US Foods.") (emphasis added)).

That Crisp's *counsel* recently learned these facts does not support that Crisp acted diligently. The question is not whether counsel was diligent in filing his Motion to Amend after he learned of the facts underlying the newly-asserted claims.[9] Rather, it is Crisp's delay in disclosing, or counsel's delay in discovering, these facts that shows Crisp was not diligent. See Sosa, 133 F.3d at 1419 (finding a lack of diligence, in part, because "the information supporting the proposed amendment . . . was available to [the party seeking the amendment] even before she filed suit"); S. Grouts & Mortars, 575 F.3d at 1241 n.3 (lack of diligence can include failure to seek information needed to determine whether amendment is

---

[9] Counsel for Crisp asserts that he first learned of "the possibility that new claims existed against US Foods" in June 2017—at least nine (9) days before the amendment deadline, and more than three (3) weeks before he filed the Amended Complaint. Even if counsel was diligent in filing the Amended Complaint, he waited another month to seek leave to amend.

12

necessary). Crisp fails to explain why it did not discover and plead these new claims before now. Crisp expressly represented to the Court in the JPR that it did not intend to amend its Complaint, and it agreed that if it did, Crisp would do so by July 9, 2017, if at all. Crisp has not been diligent and fails to show good cause under Rule 16(b) to allow its Complaint to be amended outside the deadline by which the parties agreed, and the Court approved, amendments would be requested. Crisp's Motion to Amend is denied.

### 3. Crisp's Proposed Amended Complaint

Even if Crisp had shown good cause for its delay, Crisp's Motion to Amend would still be denied because the proposed Amended Complaint fails to state a claim for relief. "[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262-63 (11th Cir. 2004) (citing Foman, 371 U.S. at 182). "A claim is futile if it cannot withstand a motion to dismiss." Atlanta Indep. Sch. Sys. v. S.F. ex rel M.F., 740 F. Supp. 1335, 1343 (N.D. Ga. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. The court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs." Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). Reasonable inferences are made in plaintiff's favor, but "unwarranted deductions of fact in a complaint are not admitted as true." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than the "mere possibility the defendant acted unlawfully." Sinaltrainal, 578 F.3d at 1261. "The well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" Id. (quoting Twombly, 550 U.S. at 570). The complaint, in summary, must make direct factual allegations or suggest reasonable inferential allegations for each material element of some viable legal theory. See Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007).

Crisp's new claims against US Foods are based on Crisp's theory that US Foods "exercised control over the PACA Trust assets of Crisp and is jointly

and severally liable, along with Crisp, for the PACA Trust Assets of Crisp." (Mot. to Amend at 2) (citing Golman-Hayden Co. v. Fresh Source Produce Inc., 217 F.3d 348, 351 (5th Cir. 2000)). It is well-settled that "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA." Golman-Hayden, 217 F.3d at 351; see also Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997); Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 421 (3d Cir. 2005); Patterson Frozen Foods, Inc. v. Crown Foods Intern., Inc., 307 F.3d 666, 669 (7th Cir. 2002); Hiller Cranberry Prods. v. Koplovsky, 165 F.3d 1, 9 (1st Cir. 1999).

Crisp does not allege, and it does not appear, that US Foods is a shareholder, officer, or director of Crisp. Crisp asserts only that US Foods—Crisp's customer—"began meeting regularly with the Officers, Directors and/or Principals of Crisp to discuss payment to Crisp's produce suppliers," and "US Foods would direct Crisp which produce suppliers to pay and when to pay them." (Am. Compl. ¶¶ 17-18). These facts are not sufficient to support Crisp's conclusory allegation that US Foods was a "de facto 'controlling person' of Crisp's PACA Trust Assets." (Id. ¶ 76). Crisp fails to allege facts to show that US Foods was in a position to control Crisp's PACA trust assets or had a fiduciary duty to preserve them. See,

e.g., Golman-Hayden, 217 F.3d at 351 (sole shareholder with absolute control of company; his "refusal or failure to exercise any appreciable oversight of the corporation's management was a breach of his fiduciary duty to preserve the trust assets"); Sunkist, 104 F.3d at 283 (officers, directors, and sole shareholders who controlled company's operations); Patterson, 307 F.3d at 667-668 (company's president who had check-signing authority); Ideal Sales, Inc. v. McGriff, 1997 WL 560779, at *3 (N.D. Tex. Sept. 2, 1997) (holding liable defendant who was 80% shareholder and president, signed checks to pay suppliers' invoices, and had general responsibility to manage company's finances; plaintiff failed to show that other defendant, who was 20% shareholder who was not involved with day to day finances or accounts payable, caused the PACA breach); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348 (S.D.N.Y. 1993) (sole shareholder who controlled day-to-day operations of company; "individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act ... [A] PACA trust in effect imposes liability on a *trustee, whether a corporation or a controlling person of that corporation*, who uses the trust assets for any purpose other than repayment of the supplier."); Bronia, Inc., v. Ho, 873 F. Supp. 854, 861 (S.D.N.Y. 1995) (sole shareholder, director, and president of

corporation); Mid-Valley Produce Corp. v. 4-XXX Produce Corp., 819 F. Supp. 209, 211 (E.D.N.Y. 1993) ("an *officer* who causes a corporate trustee to commit a breach of trust which causes a loss to the [PACA] trust is personally liable to the beneficiaries for that loss"); Frio Ice v. SunFruit, Inc., 724 F. Supp. 1373, 1381-82 (S.D. Fla. 1989), rev'd on other grounds, 918 F.2d 154 (11th Cir. 1990) (officer and principal who directed company's operations; court looks at "the closely-held nature of the corporation, the individual's active management role" and any evidence of individual's acting for the corporation); In re Nix, 1992 WL 119143, *5-6 (M.D. Ga. Apr. 10, 1992) (sole shareholder, president and director of company liable because he was responsible for implementing company's fiduciary responsibilities).

Crisp fails to allege facts sufficient to support that US Foods was an individual shareholder, officer, or director of Crisp, that US Foods was in a position to control Crisp's PACA trust assets, or that US Foods breached a fiduciary duty to preserve those assets, such that US Foods may be held liable under PACA for Crisp's breach of its PACA obligations. The new claims asserted in Crisp's proposed Amended Complaint would be futile, and Crisp's Motion to Amend is required to be denied for this additional reason. See Iqbal, 556 U.S. at 678; Hall, 367 F.3d at 1262-63.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that US Foods' Motion to Strike [464] is **GRANTED**. The Clerk of Court is directed to **STRIKE** Crisp's Amended Third Party Complaint [454] from the docket in this case.

**IT IS FURTHER ORDERED** that Crisp's Motion for Leave to File its Amended Third Party Complaint [474] is **DENIED**.

**SO ORDERED** this 3rd day of November, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE